IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| PETER MONROE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-03238-SRB |
| | ) | |
| FREIGHT ALL KINDS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant Freight All Kinds, Inc., FAK Logistics, Inc. ("FAK"), Michael Johnson ("Johnson"), Trans Pacific Transportation, Inc. ("Trans Pacific"), and American Theatre Productions d/b/a Janco Limited's ("Janco") (collectively, "Defendants") Motion to Exclude Testimoney [sic] of Plaintiff's Expert Christina Kelly. (Doc. #154.) For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

**I. FACTUAL BACKGROUND**

The following facts are supported by the record and are taken from the parties' briefs and exhibits. Additional facts relevant to the parties' arguments are set forth in Section III. Defendant Herkon Productions, LLC ("Herkon") produces a traveling show known as Rudolph the Red Nosed Reindeer: The Musical (the "Musical").[1] Herkon requires trucking services in order to move stage equipment and sets from city to city.

Janco is a professional trucking company and interstate motor carrier that specializes in transporting equipment and sets for theatrical and musical tours. Janco provided—and Herkon accepted—a quote for picking up, transporting, and delivering stage equipment and sets for the

---

[1] Herkon did not join the pending motion and has not separately moved to exclude Ms. Kelly from testifying.

Musical's 2017 tour. In order to transport all of the equipment, Janco needed two separate drivers to operate two separate tractor-trailers.

For the first tractor-trailer, Janco supplied its own driver, tractor, and trailer. For the second tractor-trailer, Janco supplied the trailer but needed to find a driver and tractor. Janco and FAK entered into a broker agreement in which FAK agreed to supply the second tractor and driver. (Doc. #172-8.) FAK obtained the second tractor, and the second driver, Johnson, by contracting with Trans Pacific.[2] Although Trans Pacific directly paid Johnson, his compensation was based on a percentage of what FAK paid to Trans Pacific.

The first tractor-trailer for the tour was operated by Janco employee Lee Radford ("Radford"). Radford was the designated "lead driver." Johnson operated the second tractor-trailer. During the times relevant to this lawsuit, Johnson testified that he did not use GPS to get to his destinations. Instead, he "just followed" Radford. (Doc. #173-6, p. 17.) On December 2, 2017, Radford and Johnson made their way through Springfield, Missouri, to deliver equipment for the Musical.

Meanwhile, Plaintiff Peter Monroe ("Monroe") was on a bicycle at an intersection. As Johnson made a right-hand turn from Walnut Street onto Hammons Parkway, his back wheels struck Monroe and drug him several yards. Monroe allegedly suffered severe injuries as a result of the accident.

On August 3, 2018, Monroe filed this case against Defendants. The Third Amended Complaint (Doc. #111) asserts 25 separate counts against Defendants, including negligence, negligent hiring/retention/training/supervision/entrustment, and negligence per se. Among other

---

[2] On or about August 7, 2017, Johnson submitted a "Driver's Owner Operator Application" to FAK. (Doc. #173-2, p. 1.) Johnson's application stated that he was applying for the position of "Contract Operator for Trans Pacific Transp., Inc." (Doc. #173-2, p. 1.) All page numbers refer to the pagination automatically generated by CM/ECF.

2

relief, Monroe seeks compensatory and punitive damages.  This case is set for a jury trial commencing April 21, 2021.

Monroe retained Christina Kelly as an expert in this case.  In 1988, Ms. Kelly became employed as a semitruck driver and has been involved in the trucking industry since that time. From 2002 to the present, Ms. Kelly has served as president and CEO of Kelmar Safety, Inc. ("Kelmar Safety").  At Kelmar Safety, Ms. Kelly specializes in safety and compliance issues for the transportation industry.  Ms. Kelly has experience with "driver qualifications . . . compliance, policies and procedures, [and] regulatory practices."  (Doc. #168-4, p. 3.)  From 2007 to the present, Ms. Kelly has served as an expert witness consultant on commercial trucking issues.

In this case, Ms. Kelly offers opinions on "commercial trucking issues, commercial truck driver performance, transportation industry business practices, safety programs and compliance with federal and state regulations."  (Doc. #168, p. 2.)  Ms. Kelly opines, in part, that "FAK Logistics, Freight All Kinds and Janco do not have an adequate safety program designed to thwart future crashes."  (Doc. #168-2, p. 7.)  Ms. Kelly further opines that Trans Pacific did not properly qualify Johnson before allowing him to drive its tractor.  Defendants now move to exclude Ms. Kelly's opinions under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Monroe opposes the motion, and the parties' arguments are addressed below.

## II.  LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  *See* Fed. R. Evid. 702; *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006).  Rule 702 provides that a "witness who is qualified as an expert . . . may testify in the form of an opinion or otherwise if:

> (a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is

> based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(a)-(d). Federal Rule of Evidence 703 further provides in part that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703.

To fulfill its "gatekeeping" role, a court faced with a proffer of expert testimony must determine at the outset whether the evidence "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. *Daubert* emphasized that the inquiry required by Rule 702 is intended to be flexible. *Id.* at 594. "The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

Due to the liberalization of expert testimony admission standards signaled by *Daubert* and its progeny, and the codification of this trend in Rule 702, the Eighth Circuit has held that expert testimony should be liberally admitted. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014) ("*Daubert* and Rule 702 thus greatly liberalized what had been the strict . . . standards for admission of expert scientific testimony."); *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) ("A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule.") (citations and quotations omitted). As long as the expert testimony "rests upon good grounds, based on what is known, it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Johnson*, 754 F.3d at 562 (citations and quotations omitted). The exclusion of expert testimony is proper "only if it is so

4

fundamentally unsupported that it can offer no assistance to the jury[.]" *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997) (citations and quotations omitted).

### III.  DISCUSSION

Here, Defendants move to exclude five categories of opinions offered by Ms. Kelly. Each category is addressed below.

### A.  Opinions Regarding Legal Duties Owed by Defendants.

Defendants move to exclude Ms. Kelly's opinions regarding the legal duties owed by FAK, Trans Pacific, and Janco.  Defendants argue that "the duties owed to the general public by those engaged in motor carrier interstate commerce have been prescribed by the legislative branch and is promulgated through the" Federal Motor Carrier Safety Regulations ("FMCSRs"). (Doc. #155, p. 7 (citing 49 U.S.C. §§ 504, 508, 31131-34, 31136-37, 31144, 31149, 31151, 31502; 49 C.F.R. Parts 300-399).)  Defendants contend that Ms. Kelly could not identify any violation of the FMCSRs, but instead opined that Defendants "should have done more."  (Doc. #155, p. 6.)  Defendants thus move to exclude Ms. Kelly's opinions as irrelevant, misleading, and prejudicial.

Monroe responds that regardless of the FMCSRs, Ms. Kelly may opine on industry customs and practices.  Specifically, Monroe contends that:

> an expert need not cite to statutory or regulatory required conduct.  Rather, evidence from an expert witness as to industry custom is relevant in establishing for the jury what is ordinarily prudent conduct for those in a similar position . . . .  Ms. Kelly testified that she has knowledge of the industry's custom and course [sic] and she can be cross-examined on such.

(Doc. #168, pp. 8-9.)  Upon review of the parties' arguments and applicable case law, the Court agrees with Monroe.

5

To prevail on a negligence claim, a plaintiff "must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff." *L.A.C. v. Ward Parkway Shopping Ctr., Co., L.P.*, 75 S.W.3d 247, 257 (Mo. banc 2002) (citations and quotations omitted). "[E]vidence of industry standards is generally admissible as proof of whether or not a duty of care was breached. However, compliance with an industry's own safety codes or standards is never a complete defense in a case of negligence." *Pierce v. Platte-Clay Elec. Coop., Inc.*, 769 S.W.2d 769, 772 (Mo. banc 1989). In addition, "[e]ven when the evidence will not show a uniform general custom . . . it may be admissible as a generally followed practice tending to show the standard of care exercised by ordinarily prudent persons in performing the task at issue." *Bowan v. Express Med. Transp., Inc.*, 135 S.W.3d 452, 460 (Mo. App. E.D. 2004).

Applying this case law, the Court finds that Ms. Kelly's opinions are admissible. Ms. Kelly testified that the FMCSRs set forth the "minimum standards" for motor carriers. (Doc. #155-3, p. 17.) However, Ms. Kelly also opined that based on her knowledge and experience, "safe and prudent carriers go above and beyond that." (Doc. #155-3, p. 17.) Ms. Kelly further opined that motor carriers (as defined by applicable law) and non-motor carriers "have a responsibility to continuously train, supervise and monitor . . . drivers to ensure they continue to exhibit the qualities of a safe, professional driver." (Doc. #168-2, pp. 2-3.)

Ms. Kelly believes that Defendants did not meet these obligations. Among other things, Ms. Kelly opines that Defendants should have subjected Johnson to a road test before allowing him to drive. She states that FMCSR 391.31 allows a company to accept a commercial driver's license ("CDL") in "lieu of a road test," but that "safe and prudent carriers" require a road test. (Doc. #155-3, p. 2; Doc. #168-2, p. 4.) Moreover, at the time of the accident, Johnson weighed

6

approximately 400 pounds. Ms. Kelly believes that "when you see someone of Mr. Johnson's size and stature, you want to make sure he has the agility in that cab to use his mirrors properly." (Doc. #155-3, p. 2.)[3] Defendants did not confirm Johnson's agility, whether through a road test or other inspection.[4]

For these reasons, and for the additional reasons stated by Monroe, the Court finds that Ms. Kelly's opinions regarding Defendants' legal duties are admissible. Defendants' arguments to the contrary are rejected.

**B. Opinions Regarding Johnson's Ability to Perform a "Lean and Look" Maneuver.**

Defendants move to exclude Ms. Kelly's opinion that Johnson's physical attributes prevented him from performing a "lean and look" maneuver which would have helped avoid the collision. Defendants argue this opinion is not based on scientifically reliable data, that Ms. Kelly is not qualified to give a medical opinion, and that the opinion is based solely on a general, casual observation of Johnson from afar during a vehicle inspection.

In response, Monroe argues that Ms. Kelly's "lean and look" opinions are admissible. Monroe explains that these opinions are appropriately based upon:

> her years of experience as a driver, her knowledge of the specialized maneuver and the agility that it requires of truck drivers or individuals involved in that profession, the safety procedures required of drivers to maintain constant vigilance of the right side of their vehicle, particularly when executing a right turn and, not the least of which, her personal observations of Defendant Michael Johnson both inside and outside of the truck cab . . . Ms. Kelly was able to conclude that Mr. Johnson most likely did not perform a lean and look maneuver due to the fact that he was not in a position to be able to move freely throughout his cab because of the fact that he was grossly overweight.

---

[3] Defendants contend these opinions are inadmissible, in part because Ms. Kelly agreed that Johnson might have passed a road test. The Court finds that Defendants' arguments go to the weight and not the admissibility of Ms. Kelly's opinions.

[4] Relatedly, shortly after striking Monroe, a police officer checked Johnson for signs of impairment. Although there is no indication Johnson was impaired due to drugs or alcohol, he had physical limitations and/or injuries that prevented him from completing a one-leg stand test and a walk and turn test.

7

(Doc. #168, p. 9.)

On the current record, the Court finds that Ms. Kelly's opinions on this issue are not admissible. The Court agrees with Defendants that the opinions are based on informal observations and not on scientifically reliable data. In addition, Ms. Kelly is not qualified to offer a medical opinion regarding Johnson's physical abilities. As a result, the Court grants Defendants' request to exclude Ms. Kelly's opinion that Johnson's physical attributes prevented him from performing a "lean and look" maneuver.

### C. Opinions Regarding Johnson's CDL Status.

Defendants move to exclude Ms. Kelly's opinions regarding Johnson's CDL status. Approximately one month before the accident at issue, Johnson was examined by Dr. Gary Hamm, a medical examiner for the United States Department of Transportation ("DOT"). Johnson appeared for the examination to renew his medical certificate so that he could continue driving under his CDL. According to Defendants, Ms. Kelly opined that Johnson misrepresented health conditions to Dr. Hamm and that, if disclosed, those conditions would have prevented Johnson from having his CDL at the time of the accident. Defendants argue that Ms. Kelly's opinions regarding Johnson's CDL status are irrelevant, prejudicial, speculative, and that she is not qualified to offer a medical opinion.

In response, Monroe appears to argue that Ms. Kelly will not opine on Johnson's licensure status or offer a medical opinion. Monroe states that "Ms. Kelly related the undisputed fact that Mr. Johnson appeared before . . . Dr. Hamm, and concealed and omitted a vast amount of medical history when he underwent his examination by Dr. Hamm." (Doc. #168, p. 11.) Monroe further states that "the issue that was being addressed and discussed was the medical condition of Mr. Johnson, not his licensure status." (Doc. #168, p. 11.)

At this time, the Court finds that Ms. Kelly's opinions on this issue are inadmissible. Ms. Kelly's opinion on CDL status is not relevant to the claims asserted by Monroe. *See Faust v. East Prairie Milling Co.*, 20 S.W.2d 918, 918 (Mo. App. S.D. 1929) (recognizing that "the charge that such chauffeur had no license was wholly irrelevant, since it had no causal connection with the accident"). Consequently, the Court grants Defendants' request to exclude Ms. Kelly's opinion on Johnson's CDL status.

### D. Opinions Regarding Whether Defendants Should Have Administered a Road Test to Johnson.

Defendants state that Ms. Kelly criticized FAK, Trans Pacific, and Janco for not administering a road test to Johnson prior to the accident. Defendants argue that any such opinions are not relevant because the FMCSRs do not require a road test. Defendants also contend that any such opinion is speculative because Ms. Kelly admitted she did not know whether Johnson would have passed or failed a road test.

In response, Monroe states that Ms. Kelly will testify "this was an industry standard failure on the part of Trans Pacific in particular, due to the fact that [Trans Pacific's corporate representative] [Jerry] Busleta was aware of the heart condition or some physical issues involving Mr. Johnson and FAK who was the designated DOT operator for the purposes of this entire enterprise." (Doc. #168, p. 12.) Monroe contends that "as to the claims related to negligent hiring, negligent supervision and negligent training, Ms. Kelly's opinions with respect to what tests were administered to Defendant Johnson to ascertain his qualifications as a driver are relevant[.]" (Doc. #168, p. 12.)

For the reasons discussed above, Ms. Kelly may offer testimony regarding road tests, including Defendants' failure to administer such a test to Johnson. Defendants' request to exclude Ms. Kelly's opinions on these issues is denied.

9

### E. Opinions Regarding Whether Johnson Should Have Seen Monroe.

According to Defendants, Ms. Kelly opined that Johnson should have seen and avoided Monroe. Defendants move to exclude this opinion as duplicative and cumulative of those offered by Monroe's accident reconstructionist expert, Michael Ditallo. Defendants also argue that Ms. Kelly's opinions are inadmissible because she is not qualified to offer an opinion on accident reconstruction.

In relevant part, Monroe responds that:

> Although she readily admits that she is not an accident reconstructionist, Ms. Kelly was familiar enough with the facts of the scene and the truck that was involved to be able to render some opinions and conclusions as to the facts surrounding the accident. As such, she testified as to the technical and specialized circumstances involved in making a turn of an eighteen wheel tractor trailer. She also testified as to the significance and the positioning of mirrors, particularly the mirrors that reflect the right side of an eighteen wheel tractor trailer.

(Doc. #168, p. 13.)

At this time, the Court agrees with the arguments presented by Monroe. Based on Ms. Kelly's knowledge, experience, and observations, it appears that she is qualified to opine on whether Johnson should have seen and avoided Monroe. On the current record, these opinions appear to be relevant, are likely to assist the trier of fact, and do not appear to be merely duplicative of those offered by Mr. Ditallo. If warranted, Defendants may reassert their arguments at trial based on the evidence and testimony presented.

### IV. CONCLUSION

Accordingly, Defendants' Motion to Exclude Testimoney [sic] of Plaintiff's Expert Christina Kelly (Doc. #154) is GRANTED IN PART and DENIED IN PART.

10

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: November 10, 2020