IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| PETER MONROE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-03238-SRB |
| | ) | |
| FREIGHT ALL KINDS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant American Productions d/b/a Janco Limited's ("Janco") Motion for Summary Judgment. (Doc. #158.) For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

### I. FACTUAL BACKGROUND

For the purpose of resolving the pending motion, the following facts are uncontroverted or deemed uncontroverted by the Court.[1] Additional facts relevant to the parties' arguments are set forth in Section III. Defendant Herkon Productions, LLC ("Herkon") produces a traveling show known as Rudolph the Red Nosed Reindeer: The Musical (the "Musical"). Herkon requires trucking services in order to move stage equipment and sets from city to city.

Janco is a professional trucking company and interstate motor carrier that specializes in transporting equipment and sets for theatrical and musical tours. Janco provided—and Herkon accepted—a quote for picking up, transporting, and delivering stage equipment and sets for the Musical's 2017 tour. In order to transport all of the equipment, Janco needed two separate drivers to operate two separate tractor-trailers.

---

[1] The relevant facts are taken from the parties' briefs and exhibits, and are simplified to the extent possible.

For the first tractor-trailer, Janco supplied its own driver, tractor, and trailer. For the second tractor-trailer, Janco supplied the trailer but needed to find a driver and tractor. Janco and Defendant FAK Logistics, Inc. ("FAK") entered into a broker agreement in which FAK agreed to supply the second tractor and driver. (Doc. #172-8.) FAK obtained the second tractor, and the second driver, Defendant Michael Johnson ("Johnson"), by contracting with Defendant Trans Pacific Transportation, Inc. ("Trans Pacific").[2] Although Trans Pacific directly paid Johnson, his compensation was based on a percentage of what FAK paid to Trans Pacific.

The first tractor-trailer for the tour was operated by Janco employee Lee Radford ("Radford"). Radford was the designated "lead driver." Johnson operated the second tractor-trailer. During the time relevant to this lawsuit, Johnson testified that he did not use GPS to get to his destination. Instead, he "just followed" Radford. (Doc. #173-6, p. 17.) On December 2, 2017, Radford and Johnson made their way through Springfield, Missouri, to deliver equipment for the Musical.

Meanwhile, Plaintiff Peter Monroe ("Monroe") was on a bicycle at an intersection. As Johnson made a right-hand turn from Walnut Street onto Hammons Parkway, his back wheels struck Monroe and drug him several yards. Monroe allegedly suffered severe injuries as a result of the accident.

On August 3, 2018, Monroe filed this lawsuit against Defendants. Monroe's Third Amended Complaint asserts the following claims against Janco: negligence (Count XIV), negligent hiring/retention (Count XV), negligent training (Count XVI), negligent supervision

---

[2] On or about August 7, 2017, Johnson submitted a "Driver's Owner Operator Application" to FAK. (Doc. #173-2, p. 1.) Johnson's application stated that he was applying for the position of "Contract Operator for Trans Pacific Transp., Inc." (Doc. #173-2, p. 1.) All page numbers refer to the pagination automatically generated by CM/ECF.

2

(Count XVII), negligent entrustment (Count XVIII), and negligence per se (Count XIX).[3] Monroe alleges, in part, that Janco is vicariously liable for Johnson's acts and omissions under the doctrine of respondeat superior.

Janco now moves for summary judgment on each count. Janco argues that the facts of this case do not support vicarious liability, and that there is no evidence that it owed or breached a duty to Monroe. Monroe opposes the motion, and the parties' arguments are addressed below.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quotations and alterations omitted). Once the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotations omitted). If there is a genuine dispute as to the facts, those facts must "be viewed in the light most favorable to the nonmoving party." *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quotations omitted).

---

[3] The Court finds that Monroe's substantive claims arise under Missouri law. Indeed, the parties cite and primarily rely upon Missouri law. However, the parties' briefs fail to set forth—and only summarily address some of—the elements of a claim for negligent hiring/retention, negligent training, negligent supervision, and negligent entrustment. *See Gibson v. Brewer*, 952 S.W.2d 239, 246 (Mo. banc 1997) (setting forth the elements of negligent hiring/retention); *Bader Farms, Inc. v. Monsanto Co.*, 431 F. Supp. 3d 1084, 1099 (E.D. Mo. 2019) (negligent training); *Reed v. Kelly*, 37 S.W.3d 274, 278 (Mo. App. E.D. 2000) (negligent supervision); *Hays v. Royer*, 384 S.W.3d 330, 333 (Mo. App. W.D. 2012) (negligent entrustment).

3

## III. DISCUSSION

### A. Janco is Not Entitled to Summary Judgment on the Issue of Vicarious Liability.

First, Janco argues that it "did not employ, nor did it have control over Mr. Johnson at the time of the accident. Accordingly, Janco cannot be vicariously liable for the acts and omissions of Mr. Johnson." (Doc. #166, p. 8.) Janco relies on several facts in support of this argument, including that: its broker agreement with FAK states that FAK has control over drivers, Johnson drove under the authority of FAK, Johnson was paid by Trans Pacific, and Trans Pacific owned the tractor involved in the accident. Monroe points to other facts in the record which he contends support a finding of vicarious liability against Janco. Monroe further contends that vicarious liability is supported because Janco and Johnson had an agency relationship. As explained below, the Court agrees with Monroe.

Under Missouri law, an employer or principal "is liable under the theory of *respondeat superior* for damages attributable to the misconduct of an employee or agent acting within the course and scope of the employment or agency." *McHaffie v. Bunch*, 891 S.W.2d 822, 825 (Mo. banc 1995). "In order to establish a principal/agent relationship, the principal must have a 'right to control' the agent." *Blunkall v. Heavy & Specialized Haulers, Inc.*, 398 S.W.3d 534, 541 (Mo. App. S.D. 2013). A "principal does not need to control or direct every movement, rather only those necessary to accomplish the final result." *Id.* Additionally, a written agency contract is not required; an "agency relationship may be created by words and conduct." *Id.* "An agency relationship may . . . exist even if the parties did not intend the relationship." *Id.*

In contrast, respondeat superior does not attach if an individual is merely an independent contractor. "An independent contractor is one who contracts with another to do something for him but is neither controlled by the other nor subject to the other's control with respect to his

4

physical conduct in the performance of the undertaking." *Scott v. SSM Healthcare St. Louis*, 70 S.W.3d 560, 566 (Mo. App. E.D. 2002) (citations, quotations, and alterations omitted). "If there is no right to control, there is no liability; those rendering services but retaining control over their own movements are not servants." *Lee v. Pulitzer Pub. Co.*, 81 S.W.3d 625, 631 (Mo. App. E.D. 2002).[4]

"Whether a party is liable under the doctrine of respondeat superior depends on the facts and circumstances in evidence in each particular case and no single test is conclusive of the issue of the party's interest in the activity and the right to control." *Id.* In general, "the relationship of principal-agent or employer-employee is a question of fact to be determined by the jury when, from the evidence adduced on the question, there may be a fair difference of opinion as to the existence of the relationship." *Johnson v. Bi-State Develop. Agency*, 793 S.W.2d 864, 867 (Mo. banc 1990).

Upon review of the record, the Court finds disputed material facts on the issue of vicarious liability. Viewed in a light most favorable to Monroe, the record supports a finding

---

[4] Missouri courts consider various factors to determine "whether one acting for another is a servant or independent contractor." *Bargfrede v. Am. Income Life Ins. Co.*, 21 S.W.3d 157, 162 (Mo. App. W.D. 2000). These factors include:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
> (b) whether or not the one employed is engaged in a distinct occupation or business;
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
> (d) the skill required in the particular occupation;
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
> (f) the length of time for which the person is employed;
> (g) the method of payment, whether by the time or by the job;
> (h) whether or not the work is a part of the regular business of the employer;
> (i) whether or not the parties believe they are creating the relation of master and servant; and
> (j) whether the principal is or is not in business.

*Id.*

that Janco controlled Johnson's movements. Janco employee Lee Radford was the "lead driver" for the delivery of Herkon's equipment. Johnson was supposed to, and in fact did, follow Radford as the two traveled through Springfield. Moreover, Janco's corporate representative testified that it was in Janco's best interests for Johnson to timely arrive in each city. Janco's corporate representative further testified that Janco had the authority to replace Johnson if he failed to carry out his job duties. Janco owned the trailer being hauled by Johnson. Finally, the trailer contained equipment owned by Herkon, which was Janco's client. (*See* Doc. #166-2, pp. 72-73.) Taken together, the evidence presented by Monroe could support a finding of vicarious liability.

To be sure, Janco offers evidence that could support a contrary finding. However, summary judgment is not warranted when more than "one reasonable conclusion can be drawn" regarding vicarious liability. *Huggins v. FedEx Ground Pack. Sys., Inc.*, 592 F.3d 853, 857 (8th Cir. 2010) (applying Missouri law); *see also Johnson*, 793 S.W.2d at 867-68. Therefore, the Court denies Janco's request for summary judgment on this issue.

### B.  Summary Judgment is Not Warranted on Monroe's Claims for Negligent Hiring/Training/Supervision/Entrustment.

Janco argues that summary judgment is warranted on Monroe's claims for negligent hiring, training, supervision, and entrustment. These arguments are addressed below.

#### i. Monroe is Not Required to Show a Violation of the FMCSR.

Janco argues that it did not owe or breach any duties to Monroe. According to Janco, "[t]he duties owed to the general public by those engaged in motor carrier interstate commerce has been prescribed by the legislative branch and is promulgated through the" Federal Motor Carrier Safety Regulations ("FMCSR"). (Doc. #166, p. 11 (citing 49 U.S.C. §§ 504, 508, 31131, 31132-34, 31136-37, 31144, 31149, 31151, 31502; 49 C.F.R. Parts 300-399).) Janco contends

6

that Monroe has not produced any evidence that it violated the FMCSRs, that it was not responsible for the hiring, training, supervising, or entrusting of Johnson, and that there is no evidence that any alleged breach caused the accident. For the reasons discussed below, the Court rejects these arguments.

"[I]n any action for negligence, the plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff." *L.A.C. v. Ward Parkway Shopping Ctr., Co.*, L.P., 75 S.W.3d 247, 257 (Mo. banc 2002) (citations and quotations omitted). "A legal duty may arise from at least three sources: (1) it may be prescribed by the legislative branch; (2) it may arise because the law imposes a duty based on the relationship between the parties or because under a particular set of circumstances an actor must exercise due care to avoid foreseeable injury; or (3) it may arise because a party has assumed a duty by contract or agreement whether written or oral." *Wilmes v. Consumers Oil Co. of Maryville*, 473 S.W.3d 705, 721 (Mo. App. W.D. 2015) (citations and quotations omitted). "Whether a duty exists is purely a question of law." *Id.*

Here, Monroe's negligence claims arise under state, not federal, law. Although Monroe argues there is evidence of FMCSR violations, such evidence is not required to avoid summary judgment. As explained by one court, "plaintiff's complaint does not attempt to state a claim for relief under the FMCSR. Plaintiff does not allege a violation of a federal regulation as a cause of action in its own right. Rather, plaintiff's complaint merely alleges possible violations of federal regulations as an element of state law causes of action." *Hejnal v. U.S. Xpress, Inc.*, No. 4:17–CV–2557 CAS, 2018 WL 534376, at *7 (E.D. Mo. Jan. 24, 2018) (citing cases).

Contrary to Janco's arguments, Monroe's claims may be based on the FMCSR and/or other evidence, including industry standards. "Evidence of industry standards is generally admissible as proof of whether or not a duty of care was breached." *Pierce v. Platte-Clay Elec. Coop., Inc.*, 769 S.W.2d 769, 772 (Mo. banc 1989). Therefore, Janco is not entitled to summary judgment even assuming, *arguendo*, that it did not violate the FMCSR. *Garrett v. Albright*, No. 06-CV-4137-NKL, 2008 WL 795621, at *3 (W.D. Mo. Mar. 21, 2008) ("Plaintiffs have established that even if Pro Logistics complied with the FMCSR, failure to follow industry practices caused Pro Logistics to negligently hire an unsafe driver."); *see also Harris v. Decker Truck Line, Inc.*, No. 4:12 CV 1598 DDN, 2013 WL 1769095, at *5 (E.D. Mo. Apr. 24, 2013) ("Missouri courts allow evidence of failures to follow motor carrier regulations and industry standards to support awards of punitive damages against commercial motor carriers.") (citing cases).

### ii. The Record Supports a Finding that Janco Owed and Breached Duties to Monroe.

Janco argues there is no evidence showing that it owed a duty to Monroe, or that it breached any such duty. The Court finds that the following facts are supported by the record, and construed in a light most favorable to Monroe, preclude summary judgment.

In a companion Order, the Court denied in relevant part Defendants' motion to exclude the testimony of Monroe's expert witness Christina Kelly. In relevant part, Ms. Kelly opined that based on her knowledge and experience, Janco had a "responsibility to continuously train, supervise, and monitor . . . drivers to ensure they continue to exhibit the qualities of a safe, professional driver." (Doc. #168-2, p. 2.) Ms. Kelly testified that Janco owed and breached duties to Monroe because Janco's employee Radford was operating the first tractor-trailer, because Johnson was following Radford, and because Johnson was hauling a Janco-owned

8

trailer. (Doc. #155-3, p. 10.) Ms. Kelly further opined that the accident was caused by "Janco's failure to have an adequate safety system in place as [it] certified [it] would in [its] application for operating authority" to the DOT. (Doc. #168-2, p. 7.)

There is also no evidence that Janco administered a road test to Johnson before allowing him to follow Radford or before allowing Johnson to haul a trailer owned by Janco.[5] Janco's corporate representative testified that Janco relies on FAK to perform due diligence on drivers. The corporate representative agreed that FAK "basically said we have a driver," and that "[t]here was no further background checking whatsoever with respect to [Johnson] on behalf of Janco." (Doc. #166-2, p. 58.)

Janco's reply correctly notes that Monroe's opposition brief does not detail why each claim for negligent hiring, supervision, training, and entrustment survives summary judgment.[6] Moreover, Janco cites evidence in the record showing that it did not breach a duty to Monroe, and that any alleged breach did not cause or contribute to Monroe's injuries. However, based on the facts set forth above, the Court finds there is conflicting evidence in the record and that summary judgment is not warranted on these claims.

**C. Janco is Entitled to Summary Judgment on Monroe's Negligence Per Se Claim.**

In Count XIX, Monroe asserts a negligence per se claim against Janco. A negligence per se claim contains four elements: "(1) the defendant violated a statute or regulation; (2) the injured plaintiff was a member of the class of persons intended to be protected by the statute or

---

[5] As discussed in companion Orders, road tests are intended to make sure a driver is competent to drive a tractor-trailer and is physically able to do so. Shortly after striking Monroe, a police officer checked Johnson for signs of impairment. Although there is no indication Johnson was impaired due to drugs or alcohol, he had physical limitations and/or injuries that prevented him from completing a one-leg stand test and a walk and turn test.

[6] Monroe has, however, argued in other briefs that there is evidence to support these claims against Janco. (Doc. #168, pp. 6, 12) (arguing in part that Janco failed to conduct a proper investigation into Johnson's driving history or background and failed to administer a road test); *see also* (Doc. #176, pp. 3-7) (Defendants' *Daubert* reply brief addressing similar arguments, including those related to Janco).

regulation; (3) the injury complained of was of the kind the statute or regulation was designed to prevent; and (4) the violation of the statute or regulation was the proximate cause of the injury." *Dibrill v. Normandy Assoc., Inc.*, 383 S.W.3d 77, 84-85 (Mo. App. E.D 2012). "Negligence per se is in effect a presumption that one who has violated a safety statute has violated his legal duty to use due care." *Goudeaux v. Bd. of Police Com'rs of Kansas City*, 409 S.W.3d 508, 513 (Mo. App. W.D. 2013).

Monroe's Third Amended Complaint alleges that Janco violated Mo. Rev. Stat. § 304.012.1. This statute provides that: "[e]very person operating a motor vehicle on the roads and highways of this state shall drive the vehicle in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person and shall exercise the highest degree of care." Mo. Rev. Stat. § 304.012.1.

Janco argues that Mo. Rev. Stat. § 304.012.1 does not prohibit specific conduct as required to prevail on a negligence per se claim. In support, Janco relies upon *Cisco v. Mullikin*, No. 4:11 CV 295 RWS, 2012 WL 549504 (E.D. Mo. Feb. 21, 2012). *Cisco* dismissed a negligence per se claim under Mo. Rev. Stat. § 304.012.1 because it does not "set[] out a statutory standard of care." *Id.* at *2.

Monroe's opposition brief fails to explain why summary judgment should not be entered on his negligence per se claim. Indeed, Monroe does not even address this claim. Consequently, based on *Cisco* and the arguments presented by Janco, summary judgment will be entered in favor of Janco on the negligence per se claim.

## IV. CONCLUSION

Accordingly, Defendant American Productions d/b/a Janco Limited's Motion for Summary Judgment (Doc. #158) is GRANTED IN PART and DENIED IN PART. The motion

is GRANTED insofar as summary judgment is entered in favor of Janco and against Monroe on Count XIX for negligence per se.  The motion is DENIED on all other claims.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated:  November 10, 2020