# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

PETER MONROE,                              )
                                           )
                    Plaintiff,             )
                                           )
        v.                                 )        Case No. 18-cv-03238-SRB
                                           )
FREIGHT ALL KINDS INC., et al.,            )
                                           )
                    Defendants.            )

## ORDER

Before the Court is Defendant Trans Pacific Transportation, Inc.'s ("Trans Pacific")

Motion for Summary Judgment. (Doc. #159.) For the reasons set forth below, the motion is

GRANTED IN PART and DENIED IN PART.

## I. FACTUAL BACKGROUND

For the purpose of resolving the pending motion, the following facts are uncontroverted

or deemed uncontroverted by the Court.[1] Additional facts relevant to the parties' arguments are

set forth in Section III. Defendant Herkon Productions, LLC ("Herkon") produces a traveling

show known as Rudolph the Red Nosed Reindeer: The Musical (the "Musical"). Herkon

requires trucking services in order to move stage equipment and sets from city to city.

Defendant American Productions d/b/a Janco Limited ("Janco") is a professional trucking

company and interstate motor carrier that specializes in transporting equipment and sets for

theatrical and musical tours. Janco provided—and Herkon accepted—a quote for picking up,

transporting, and delivering stage equipment and sets for the Musical's 2017 tour. In order to

---

[1] The relevant facts are taken from the parties' briefs and exhibits, and are simplified to the extent possible.

transport all of the equipment, Janco needed two separate drivers to operate two separate tractor-trailers.

For the first tractor-trailer, Janco supplied its own driver, tractor, and trailer. For the second tractor-trailer, Janco supplied the trailer but needed to find a driver and tractor. Janco and Defendant FAK Logistics, Inc. ("FAK") entered into a broker agreement in which FAK agreed to supply the second tractor and driver. (Doc. #172-8.) FAK obtained the second tractor, and the second driver, Defendant Michael Johnson ("Johnson"), by contracting with Trans Pacific.[2] Although Trans Pacific directly paid Johnson, his compensation was based on a percentage of what FAK paid to Trans Pacific.

The first tractor-trailer for the tour was operated by Janco employee Lee Radford ("Radford"). Radford was the designated "lead driver." Johnson operated the second tractor-trailer. During the times relevant to this lawsuit, Johnson testified that he did not use GPS to get to his destinations. Instead, he "just followed" Radford. (Doc. #173-6, p. 17.) On December 2, 2017, Radford and Johnson made their way through Springfield, Missouri, to deliver equipment for the Musical.

Meanwhile, Plaintiff Peter Monroe ("Monroe") was on a bicycle at an intersection. As Johnson made a right-hand turn from Walnut Street onto Hammons Parkway, his back wheels struck Monroe and drug him several yards. Monroe allegedly suffered severe injuries as a result of the accident.

On August 3, 2018, Monroe filed this suit against Defendants. Monroe's Third Amended Complaint asserts the following claims against Trans Pacific: negligence (Count VIII), negligent

---

[2] On or about August 7, 2017, Johnson submitted a "Driver's Owner Operator Application" to FAK. (Doc. #173-2, p. 1.) Johnson's application stated that he was applying for the position of "Contract Operator for Trans Pacific Transp., Inc." (Doc. #173-2, p. 1.) All page numbers refer to the pagination automatically generated by CM/ECF.

2

hiring/retention (Count IX), negligent training (Count X), negligent supervision (Count XI), negligent entrustment (Count XII), and negligence per se (Count XIII).[3]  Monroe alleges, in part, that Trans Pacific is vicariously liable for Johnson's acts and omissions under the doctrine of respondeat superior.

Trans Pacific now moves for summary judgment on each count.  Trans Pacific argues that the facts of this case do not support vicarious liability, and that there is no evidence it owed or breached a duty to Monroe.  Monroe opposes the motion, and the parties' arguments are addressed below.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quotations and alterations omitted).  Once the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial."  *Id.* (quotations omitted).  If there is a genuine dispute as to the facts, those facts must "be viewed in the light most favorable to the nonmoving party."  *Id.*  "Credibility determinations, the

---

[3] As noted by Trans Pacific, Count VIII for negligence is incorrectly titled Count XIII.  The Court refers to Count VIII because it is the eighth claim for relief.  The Court finds that Monroe's substantive claims arise under Missouri law.  Indeed, the parties cite and primarily rely upon Missouri law.  However, the parties' briefs fail to set forth— and only summarily address some of—the elements of a claim for negligent hiring/retention, negligent training, negligent supervision, and negligent entrustment.  *See Gibson v. Brewer*, 952 S.W.2d 239, 246 (Mo. banc 1997) (setting forth the elements of negligent hiring/retention); *Bader Farms, Inc. v. Monsanto Co.*, 431 F. Supp. 3d 1084, 1099 (E.D. Mo. 2019) (negligent training); *Reed v. Kelly*, 37 S.W.3d 274, 278 (Mo. App. E.D. 2000) (negligent supervision); *Hays v. Royer*, 384 S.W.3d 330, 333 (Mo. App. W.D. 2012) (negligent entrustment).

3

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quotations omitted).

## III. DISCUSSION

### A. Trans Pacific is Not Entitled to Summary Judgment on the Issue of Vicarious Liability.

Trans Pacific's first argument is that it did not have control over Johnson and therefore cannot be liable under a respondeat superior theory. In part, Trans Pacific argues the record shows that Johnson was driving for and under the authority of FAK, that Trans Pacific did not control the manner in which Johnson worked, and that FAK assumed control over Johnson. Trans Pacific contends these facts show that Johnson was an independent contractor for Trans Pacific, such that vicarious liability does not apply. Monroe contends there is sufficient evidence in the record to hold Trans Pacific vicariously liable.

Under Missouri law, an employer or principal "is liable under the theory of *respondeat superior* for damages attributable to the misconduct of an employee or agent acting within the course and scope of the employment or agency." *McHaffie v. Bunch*, 891 S.W.2d 822, 825 (Mo. banc 1995). "In order to establish a principal/agent relationship, the principal must have a 'right to control' the agent." *Blunkall v. Heavy & Specialized Haulers, Inc.*, 398 S.W.3d 534, 541 (Mo. App. S.D. 2013). A "principal does not need to control or direct every movement, rather only those necessary to accomplish the final result." *Id.* Additionally, a written agency contract is not required; an "agency relationship may be created by words and conduct." *Id.* "An agency relationship may . . . exist even if the parties did not intend the relationship." *Id.*

In contrast, respondeat superior does not attach if an individual is merely an independent contractor. "An independent contractor is one who contracts with another to do something for him but is neither controlled by the other nor subject to the other's control with respect to his

4

physical conduct in the performance of the undertaking." *Scott v. SSM Healthcare St. Louis*, 70 S.W.3d 560, 566 (Mo. App. E.D. 2002) (citations, quotations, and alterations omitted). "If there is no right to control, there is no liability; those rendering services but retaining control over their own movements are not servants." *Lee v. Pulitzer Pub. Co.*, 81 S.W.3d 625, 631 (Mo. App. E.D. 2002).[4]

"Whether a party is liable under the doctrine of respondeat superior depends on the facts and circumstances in evidence in each particular case and no single test is conclusive of the issue of the party's interest in the activity and the right to control." *Id.* In general, "the relationship of principal-agent or employer-employee is a question of fact to be determined by the jury when, from the evidence adduced on the question, there may be a fair difference of opinion as to the existence of the relationship." *Johnson v. Bi-State Develop. Agency*, 793 S.W.2d 864, 867 (Mo. banc 1990).

Upon review of the record, the Court finds disputed material facts on the issue of vicarious liability. Viewed in a light most favorable to Monroe, the evidence shows the following. At all relevant times, Jerry Busleta was the sole owner of Trans Pacific and testified

---

[4] Missouri courts consider various factors to determine "whether one acting for another is a servant or independent contractor." *Bargfrede v. Am. Income Life Ins. Co.*, 21 S.W.3d 157, 162 (Mo. App. W.D. 2000). These factors include:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
> (b) whether or not the one employed is engaged in a distinct occupation or business;
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
> (d) the skill required in the particular occupation;
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
> (f) the length of time for which the person is employed;
> (g) the method of payment, whether by the time or by the job;
> (h) whether or not the work is a part of the regular business of the employer;
> (i) whether or not the parties believe they are creating the relation of master and servant; and
> (j) whether the principal is or is not in business.

*Id.*

as its corporate representative.  Trans Pacific is in the business of providing tractors and/or drivers for hauling equipment for Broadway shows, rock-and-roll concerts, and similar events. Busleta testified that he arranged a meeting with Johnson, and met with him, before allowing Johnson to drive one of Trans Pacific's trucks.  Busleta wanted to make sure Johnson was qualified to drive a truck and to "get to know him."  (Doc. #171-1, p. 5.)  In 2017, Trans Pacific and Johnson entered into a three-year agreement for Johnson to drive a truck owned by Trans Pacific.  (Doc. #171-1, p. 14.)  Trans Pacific financially benefitted from the work performed by Johnson.  FAK paid Trans Pacific, and then Trans Pacific directly paid Johnson a percentage of that amount.

At the time of the accident, Johnson was operating a tractor that was owned and supplied by Trans Pacific.  Johnson testified that he was operating the tractor on behalf of or in the course of his employment with FAK.  However, Johnson was then asked whether he had any interest in Trans Pacific.  Johnson responded "I'm just an employee."  (Doc. #171-2, p. 9.)  Johnson further testified that he "work[s] for Jerry" Busleta.  (Doc. #171-2, p. 9.)  Further, Busleta contacted Johnson every week while Johnson was out on the road.  (Doc. #171-1, p. 14.)  Finally, the contract between Trans Pacific and Johnson gave Trans Pacific the right to substitute Johnson with a third party if Johnson "fail[ed] to perform all of the duties within his . . . power required to keep the Carrier and the tour on schedule, causing a breach between all parties . . . ."  (Doc. #171-8, p. 1, ¶ 7.)

Taken together, the evidence shows that Trans Pacific retained a degree of control over Johnson that would support a finding of vicarious liability.  Although Trans Pacific offers evidence that could support a contrary finding, summary judgment is not warranted when more than "one reasonable conclusion can be drawn" regarding vicarious liability.  *Huggins v. FedEx*

*Ground Pack. Sys., Inc.*, 592 F.3d 853, 857 (8th Cir. 2010) (applying Missouri law); *see also Johnson*, 793 S.W.2d at 867-68.  Therefore, the Court denies Trans Pacific's request for summary judgment on vicarious liability.

### B.  Trans Pacific is Not Entitled to Summary Judgment Under the Borrowed Servant Doctrine.

Trans Pacific argues that if respondeat superior is applicable, summary judgment is warranted under the borrowed servant doctrine.  Specifically, Trans Pacific argues "it is clear that Trans Pacific relinquished any control it may have ever had over Mr. Johnson, and FAK controlled his work at the time of the accident."  (Doc. #160, p. 11.)  Monroe argues the record does not support the borrowed servant doctrine, and the Court agrees.

"The borrowed servant doctrine can block a general employer's vicarous liability for its employee's negligence."  *Wren v. Vaca*, 922 S.W.2d 408, 410 (Mo. App. W.D. 1996).  The borrowed servant doctrine "provides that in the leasing of equipment and operators to another, the mere fact that the general employer continues to pay the operator's wages, the gas, oil and other expense, and is responsible for maintenance, does *not* prevent the operator from becoming an employee of the lessee."  *Id.* (citations and quotations omitted) (emphasis in original).  "The courts refer to the lessor in such situations as the general employer and to the lessee as the special employer."  *Id.*

To avail itself of the borrowed servant defense, a defendant must prove three elements: "(a) [C]onsent on the part of the employee to work for the special employer; (b) actual entry by the employee upon the work of and for the special master pursuant to an express or implied contract so to do; and (c) power of the special employer to control the details of the work to be performed and to determine how the work shall be done and whether it shall stop or continue."  *Id.*

7

For many of the same reasons discussed above, the Court finds that summary judgment is not warranted under the borrowed servant doctrine. Contrary to Trans Pacific's arguments, there are disputed facts regarding whether it "relinquish[ed] . . . control over the performance of an employee to another employer." (Doc. #181, p. 7 (citing *Ballard v. Leonard Bros. Transp. Co., Inc.*, 506 S.W.2d 346, 350-51 (Mo. 1974)). There are also disputed facts regarding whether Trans Pacific had authority to decide whether Johnson's work "shall stop or continue." *Wren*, 922 S.W.2d at 410. Therefore, the Court denies Trans Pacific's request for summary judgment under the borrowed servant doctrine.

### C. Summary Judgment is Not Warranted on Monroe's Claims for Negligent Hiring/Training/Supervision/Entrustment.

Trans Pacific argues that summary judgment is warranted on Monroe's claims for negligent hiring, training, supervision, and entrustment. These arguments are addressed below.

### i. Monroe is Not Required to Show a Violation of the FMCSR.

Trans Pacific argues that Monroe's negligent hiring, training, supervision, and entrustment claims rely on the Federal Motor Carrier Safety Regulations ("FMCSR"). (Doc. #160, p. 13 (citing 49 U.S.C. §§ 504, 508, 31131, 31132-34, 31136-37, 31144, 31149, 31151, 31502; 49 C.F.R. Parts 300-399).) However, Trans Pacific contends it is not subject to the FMCSR and that even if it is, there is no evidence it violated those provisions. Monroe responds that his negligence claims arise under state, not federal law, and can be based on violations of the FMCSR, industry standards, and other evidence. For the reasons discussed below, the Court agrees with Monroe.

"[I]n any action for negligence, the plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff." *L.A.C. v. Ward Parkway Shopping Ctr., Co.,*

*L.P.*, 75 S.W.3d 247, 257 (Mo. banc 2002) (citations and quotations omitted). "A legal duty may arise from at least three sources: (1) it may be prescribed by the legislative branch; (2) it may arise because the law imposes a duty based on the relationship between the parties or because under a particular set of circumstances an actor must exercise due care to avoid foreseeable injury; or (3) it may arise because a party has assumed a duty by contract or agreement whether written or oral." *Wilmes v. Consumers Oil Co. of Maryville*, 473 S.W.3d 705, 721 (Mo. App. W.D. 2015) (citations and quotations omitted). "Whether a duty exists is purely a question of law." *Id.*

Here, Monroe's negligence claims arise under state, not federal, law. Although Monroe argues there is evidence of FMCSR violations, such evidence is not required to avoid summary judgment. As explained by one court, "plaintiff's complaint does not attempt to state a claim for relief under the FMCSR. Plaintiff does not allege a violation of a federal regulation as a cause of action in its own right. Rather, plaintiff's complaint merely alleges possible violations of federal regulations as an element of state law causes of action." *Hejnal v. U.S. Xpress, Inc.*, No. 4:17–CV–2557 CAS, 2018 WL 534376, at *7 (E.D. Mo. Jan. 24, 2018) (citing cases).

Contrary to Trans Pacific's arguments, Monroe's claims may be based evidence outside of the FMCSR, including industry standards and other evidence. "Evidence of industry standards is generally admissible as proof of whether or not a duty of care was breached." *Pierce v. Platte-Clay Elec. Coop., Inc.*, 769 S.W.2d 769, 772 (Mo. banc 1989). Therefore, Trans Pacific is not entitled to summary judgment even assuming, *arguendo*, that it was not subject to and/or did not violate the FMCSR. *Garrett v. Albright*, No. 06-CV-4137-NKL, 2008 WL 795621, at *3 (W.D. Mo. Mar. 21, 2008) ("Plaintiffs have established that even if Pro Logistics complied with the FMCSR, failure to follow industry practices caused Pro Logistics to

9

negligently hire an unsafe driver."); *see also Harris v. Decker Truck Line, Inc.*, No. 4:12 CV 1598 DDN, 2013 WL 1769095, at *5 (E.D. Mo. Apr. 24, 2013) ("Missouri courts allow evidence of failures to follow motor carrier regulations and industry standards to support awards of punitive damages against commercial motor carriers.") (citing cases).

### ii. The Record Supports a Finding that Trans Pacific Owed Duties to Monroe and Breached Those Duties.

Trans Pacific argues that "[e]ven if there was another source of duty . . . Plaintiff offers no evidence as to how any breach . . . caused or contributed to cause the injuries at issue in this case." (Doc. #160, pp. 12-14.) Upon review of the record, the Court finds that the following evidence—construed in a light most favorable to Monroe—supports a finding that Trans Pacific owed and breached duties to Monroe.

First, in a companion Order, the Court denied in relevant part Defendants' motion to exclude the testimony of Monroe's expert witness Christina Kelly. In relevant part, Ms. Kelly opined that based on her knowledge and experience, "Trans Pacific . . . had a duty to supply a driver that could be qualified." (Doc. #168-2, p. 3.) This duty included putting "a good safe, driver behind the wheel . . . that's what we do in the industry." (Doc. #155-3, p. 15.)

According to Ms. Kelly, this duty includes subjecting potential drivers to a road test. She opined that a road test was particularly important in this case because Johnson weighed approximately 400 pounds. Ms. Kelly believes that "when you see someone of Mr. Johnson's size and stature, you want to make sure he has the agility in that cab to use his mirrors properly." (Doc. #155-3, p. 2.) Ms. Kelly opined that Trans Pacific breached its duty to provide a safe driver by not requiring that Johnson pass a road test.[5]

---

[5] Relatedly, shortly after striking Monroe, a police officer checked Johnson for signs of impairment. Although there is no indication Johnson was impaired due to drugs or alcohol, he had physical limitations and/or injuries that prevented him from completing a one-leg stand test and a walk and turn test.

10

Second, Busleta testified that Trans Pacific requires applicants to undergo a road test. Busleta explained that requiring a road test is "common sense. If you can't handle the truck, you can't drive it." (Doc. #171-1, p. 8.) Trans Pacific's road test involves driving "around the block and . . . up and down the highway[.]" (Doc. #171-1, p. 8.) However, Busleta testified that Trans Pacific did not administer a road test to Johnson and could not remember why this did not occur. (Doc. #171-1, p. 8.)

Third, Busleta testified that Trans Pacific deems it important for a potential driver to be medically qualified. Trans Pacific did not undertake any independent medical examination of Johnson and relied solely on the results of a United States Department of Transportation ("DOT") medical examination. Buletta testified that Johnson referenced having a heart condition but stated that "his doctor passed him on his heart conditions." (Doc. #171-1, p. 10-11.)

However, Monroe has presented evidence suggesting that Johnson did not disclose all of his medical conditions to Dr. Gary Hamm, the DOT medical examiner. Johnson's prior medical history included various ailments, including atrial fibrillation. Dr. Hamm testified that if Johnson had disclosed his atrial fibrillation, it would have been a "DQ right away." (Doc. #168-7, p. 9.)

According to Monroe, Ms. Kelly will testify that Trans Pacific's failure to administer a road test or investigate Johnson's medical history "was an industry standard failure on the part of Trans Pacific in particular, due to the fact that Busleta was aware of the heart condition or some physical issues involving Mr. Johnson[.]" (Doc. #168, p. 12.) These and other facts presented by Monroe support a finding that Trans Pacific had a duty to ensure that Johnson was able to safely operate its truck and breached that duty which caused or contributed to cause Monroe's

injuries. Consequently, the Court finds that Trans Pacific has failed to show it is entitled to summary judgment on Monroe's claims for negligent hiring, training, supervision, and entrustment.

### C. Trans Pacific is Entitled to Summary Judgment on Monroe's Negligence Per Se Claim.

In Count XIII, Monroe asserts a negligence per se claim against Trans Pacific. A negligence per se claim contains four elements: "(1) the defendant violated a statute or regulation; (2) the injured plaintiff was a member of the class of persons intended to be protected by the statute or regulation; (3) the injury complained of was of the kind the statute or regulation was designed to prevent; and (4) the violation of the statute or regulation was the proximate cause of the injury." *Dibrill v. Normandy Assoc., Inc.*, 383 S.W.3d 77, 84-85 (Mo. App. E.D 2012). "Negligence per se is in effect a presumption that one who has violated a safety statute has violated his legal duty to use due care." *Goudeaux v. Bd. of Police Com'rs of Kansas City*, 409 S.W.3d 508, 513 (Mo. App. W.D. 2013).

Monroe's Third Amended Complaint alleges that Trans Pacific violated Mo. Rev. Stat. § 304.012.1. This statute provides that: "[e]very person operating a motor vehicle on the roads and highways of this state shall drive the vehicle in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person and shall exercise the highest degree of care." Mo. Rev. Stat. § 304.012.1.

Trans Pacific argues that Mo. Rev. Stat. § 304.012.1 does not prohibit specific conduct as required to prevail on a negligence per se claim. In support, Trans Pacific relies upon *Cisco v. Mullikin*, No. 4:11 CV 295 RWS, 2012 WL 549504 (E.D. Mo. Feb. 21, 2012). *Cisco* dismissed a negligence per se claim under Mo. Rev. Stat. § 304.012.1 because it does not "set[] out a statutory standard of care." *Id.* at *2.

Monroe's opposition brief fails to explain why summary judgment should not be entered on his negligence per se claim.  Indeed, Monroe does not even address this claim. Consequently, based on *Cisco* and the arguments presented by Trans Pacific, summary judgment will be entered in favor of Trans Pacific on Monroe's negligence per se claim.

## IV.  CONCLUSION

Accordingly, Defendant Trans Pacific Transportation, Inc.'s Motion for Summary Judgment (Doc. #159) is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED insofar as summary judgment is entered in favor of Trans Pacific and against Monroe on Count XIII for negligence per se.  The motion is DENIED on all other claims.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated:  November 10, 2020

13