IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| PETER MONROE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-03238-SRB |
| | ) | |
| FREIGHT ALL KINDS INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant FAK Logistics, Inc.'s ("FAK") Motion for Partial Summary Judgment. (Doc. #161.) For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

### I. FACTUAL BACKGROUND

For the purpose of resolving the pending motion, the following facts are uncontroverted or deemed uncontroverted by the Court.[1] Additional facts relevant to the parties' arguments are set forth in Section III. Defendant Herkon Productions, LLC ("Herkon") produces a traveling show known as Rudolph the Red Nosed Reindeer: The Musical (the "Musical"). Herkon requires trucking services in order to move stage equipment and sets from city to city.

Defendant American Productions d/b/a Janco Limited ("Janco") is a professional trucking company and interstate motor carrier that specializes in transporting equipment and sets for theatrical and musical tours. Janco provided—and Herkon accepted—a quote for picking up, transporting, and delivering stage equipment and sets for the Musical's 2017 tour. In order to

---

[1] The relevant facts are taken from the parties' briefs and exhibits, and are simplified to the extent possible.

transport all of the equipment, Janco needed two separate drivers to operate two separate tractor-trailers.

For the first tractor-trailer, Janco supplied its own driver, tractor, and trailer. For the second tractor-trailer, Janco supplied the trailer but needed to find a driver and tractor. Janco and FAK entered into a broker agreement in which FAK agreed to supply the second tractor and driver. (Doc. #172-8.) FAK obtained the second tractor, and the second driver, Defendant Michael Johnson ("Johnson"), by contracting with Defendant Trans Pacific Transportation, Inc. ("Trans Pacific").[2] Although Trans Pacific directly paid Johnson, his compensation was based on a percentage of what FAK paid to Trans Pacific.

The first tractor-trailer for the tour was operated by Janco employee Lee Radford ("Radford"). Radford was the designated "lead driver." Johnson operated the second tractor-trailer. During the times relevant to this lawsuit, Johnson testified that he did not use GPS to get to his destinations. Instead, he "just followed" Radford. (Doc. #173-6, p. 17.) On December 2, 2017, Radford and Johnson made their way through Springfield, Missouri, to deliver equipment for the Musical.

Meanwhile, Plaintiff Peter Monroe ("Monroe") was on a bicycle at an intersection. As Johnson made a right-hand turn from Walnut Street onto Hammons Parkway, his back wheels struck Monroe and drug him several yards. Monroe allegedly suffered severe injuries as a result of the accident.

On August 3, 2018, Monroe filed this suit against Defendants. Monroe's Third Amended Complaint asserts the following claims against FAK: negligence (Count II), negligent

---

[2] On or about August 7, 2017, Johnson submitted a "Driver's Owner Operator Application" to FAK. (Doc. #173-2, p. 1.) Johnson's application stated that he was applying for the position of "Contract Operator for Trans Pacific Transp., Inc." (Doc. #173-2, p. 1.) All page numbers refer to the pagination automatically generated by CM/ECF.

2

hiring/retention (Count III), negligent training (Count IV), negligent supervision (Count V), negligent entrustment (Count VI), and negligence per se (Count VII).[3] Among other relief, each count requests an award of punitive damages.

FAK now moves for partial summary judgment under Federal Rule of Civil Procedure 56. FAK admits that it is vicariously liable for Johnson's acts and omissions if he was negligent. Based on that admission, FAK argues that Monroe is precluded from proceeding against FAK on any other claim. FAK alternatively argues that Monroe's negligence claims depend upon violations of the Federal Motor Carrier Safety Regulations ("FMCSR") but that Monroe lacks evidence of any such violations. Monroe opposes the motion, and the parties' arguments are addressed below.

## II. LEGAL STANDARD

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quotations and alterations omitted). Once the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotations omitted). If there is a

---

[3] The Court finds that Monroe's substantive claims arise under Missouri law. Indeed, the parties cite and primarily rely upon Missouri law. However, the parties' briefs fail to set forth—and only summarily address some of—the elements of a claim for negligent hiring/retention, negligent training, negligent supervision, and negligent entrustment. *See Gibson v. Brewer*, 952 S.W.2d 239, 246 (Mo. banc 1997) (setting forth the elements of negligent hiring/retention); *Bader Farms, Inc. v. Monsanto Co.*, 431 F. Supp. 3d 1084, 1099 (E.D. Mo. 2019) (negligent training); *Reed v. Kelly*, 37 S.W.3d 274, 278 (Mo. App. E.D. 2000) (negligent supervision); *Hays v. Royer*, 384 S.W.3d 330, 333 (Mo. App. W.D. 2012) (negligent entrustment).

3

genuine dispute as to the facts, those facts must "be viewed in the light most favorable to the nonmoving party." *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quotations omitted).

### III. DISCUSSION

#### A. FAK's Admission of Vicarious Liability Does Not Foreclose Monroe's Additional Claims Against FAK.

FAK's first argument is that because it has admitted vicarious liability, summary judgment is warranted on Counts II-VI. FAK relies upon *McHaffie v. Bunch*, 891 S.W.2d 822 (Mo. banc 1995), which held that "once an employer has admitted *respondeat superior* liability for a driver's negligence, it is improper to allow a plaintiff to proceed against an employer on any other theory of imputed liability." *Id.* at 826. *McHaffie* explained that "[i]f all of the theories for attaching liability to one person for the negligence of another were recognized and all pleaded in one case where the imputation of negligence is admitted, the evidence laboriously submitted to establish other theories serves no real purpose." *Id.*

However, in dicta, *McHaffie* recognized that "it may be possible that an employer or entrustor may be held liable on a theory of negligence that does not derive from and is not dependent on the negligence of an entrustee or employee. In addition, it is also possible that an employer or an entrustor may be liable for punitive damages which would not be assessed against the employee/entrustee." *Id.*

Missouri courts have subsequently held that there is a punitive damages exception to *McHaffie's* general rule. *Bell v. Redjal*, 569 S.W.3d 70, 81-82 (Mo. App. E.D. 2019); *Wilson v.*

4

*Image Flooring, LLC*, 400 S.W.3d 386, 393 (Mo. App. W.D. 2013).[4]  In *Wilson*, the court explained that:

> The rationale for the Court's holding in *McHaffie* was that, where vicarious liability was admitted and none of the direct liability theories could prevail in the absence of proof of the employee's negligence, the employer's liability was necessarily fixed by the negligence of the employee.  Thus, any additional evidence supporting direct liability claims could serve only to waste time and possibly prejudice the defendants.  The same cannot be said, however, when a claim for punitive damages based upon the direct liability theories is raised. If an employer's hiring, training, supervision, or entrustment practices can be characterized as demonstrating complete indifference or a conscious disregard for the safety of others, then the plaintiff would be required to present additional evidence, above and beyond demonstrating the employee's negligence, to support a claim for punitive damages. Unlike in the *McHaffie* scenario, this evidence would have a relevant, non-prejudicial purpose. And because the primary concern in *McHaffie* was the introduction of extraneous, potentially prejudicial evidence, we believe that the rule announced in *McHaffie* does not apply where punitive damages are claimed against the employer, thus making the additional evidence both relevant and material.

*Wilson*, 400 S.W.3d at 393 (citations omitted).

The facts of this case fit within the framework set forth in *Wilson*.  Monroe asserts direct claims against FAK for negligence, negligent hiring/training/supervision/entrustment.[5]  These claims allege that FAK committed negligent acts apart from those committed by Johnson. Monroe also seeks punitive damages against FAK on each claim.

In its suggestions in support, FAK failed to move for summary judgment on Monroe's request for punitive damages.  FAK's reply brief argues that Monroe "has not presented any

---

[4] FAK's reply brief correctly notes that neither the Missouri Supreme Court nor the Eighth Circuit Court of Appeals have squarely decided whether there is a punitive damages exception to *McHaffie*.  In the absence of controlling authority, the Court finds *Bell* and *Wilson* to be persuasive.

[5] To avoid confusion, the Court refers to these as direct claims against FAK even though they "constitute claims of derivative or dependent liability ('imputed liability') based on the conduct of [Johnson]; i.e. one element of imposing liability on [FAK] is a finding of some level of culpability by [Johnson] in causing the injury to [Monroe]." *Kyles v. Celadon Truck. Servs., Inc.*, No. 6:15–cv–03193–MDH, 2015 WL 6143953, at *4, n.3 (W.D. Mo. Oct. 19, 2015).

5

evidence of acts or conduct by FAK that rises to the level of punitive damages." (Doc. #182, p. 4.)  The Court need not consider this argument because it was raised for the first time in a reply brief.  *See Substation K, Inc. v. Kansas City Power & Light Co.*, Case No. 4:19-cv-00031-SRB, 2020 WL 3039127, at *2 n.2 (W.D. Mo. June 5, 2020).  Nonetheless, on the current record the Court finds that Monroe's request for punitive damages survives summary judgment.  Therefore, the Court rejects FAK's argument that *McHaffie* precludes Monroe's direct claims against FAK. *See also Kyles*, 2015 WL 6143953, at *4 (W.D. Mo. Oct. 19, 2015) (allowing vicarious liability claims to proceed against employer as well as direct claims for negligent hiring, training, supervision, and entrustment).

### B. Summary Judgment is Not Warranted on Monroe's Claims for Negligent Hiring/Training/Supervision/Entrustment.

FAK argues that summary judgment is warranted on Monroe's claims for negligent hiring, training, supervision, and entrustment.  These arguments are addressed below.

#### i. Monroe is Not Required to Show a Violation of the FMCSR.

FAK argues that even if *McHaffie* does not apply, "the undisputed facts demonstrate there is no breach of any legally recognized duty causally related to the incident."  (Doc. #162, p. 7.)  In support, FAK claims that "[a] motor carrier's duty to the general public has been prescribed by the legislative branch and is promulgated through the FMCSR."  (Doc. #162, p. 10 (citing 49 U.S.C. §§ 504, 508, 31131, 31132-34, 31136-37, 31144, 31149, 31151, 31502; 49 C.F.R. Parts 300-399).)  FAK argues that summary judgment is warranted because Monroe relies solely on duties under the FMCSR, but has not produced any evidence that FAK breached such duties.  Monroe responds that his negligence claims arise under state, not federal law, and can be based on violations of the FMCSR, industry standards, and other evidence.  For the reasons discussed below, the Court agrees with Monroe.

6

"[I]n any action for negligence, the plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff." *L.A.C. v. Ward Parkway Shopping Ctr., Co.,* L.P., 75 S.W.3d 247, 257 (Mo. banc 2002) (citations and quotations omitted). "A legal duty may arise from at least three sources: (1) it may be prescribed by the legislative branch; (2) it may arise because the law imposes a duty based on the relationship between the parties or because under a particular set of circumstances an actor must exercise due care to avoid foreseeable injury; or (3) it may arise because a party has assumed a duty by contract or agreement whether written or oral." *Wilmes v. Consumers Oil Co. of Maryville*, 473 S.W.3d 705, 721 (Mo. App. W.D. 2015) (citations and quotations omitted). "Whether a duty exists is purely a question of law." *Id.*

Here, Monroe's negligence claims arise under state, not federal, law. Although Monroe argues there is evidence of FMCSR violations, such evidence is not required to avoid summary judgment. As explained by one court, "plaintiff's complaint does not attempt to state a claim for relief under the FMCSR. Plaintiff does not allege a violation of a federal regulation as a cause of action in its own right. Rather, plaintiff's complaint merely alleges possible violations of federal regulations as an element of state law causes of action." *Hejnal v. U.S. Xpress, Inc.*, No. 4:17–CV–2557 CAS, 2018 WL 534376, at *7 (E.D. Mo. Jan. 24, 2018) (citing cases).

Contrary to FAK's arguments, Monroe's claims may be based on the FMCSR and/or other evidence, including industry standards. "Evidence of industry standards is generally admissible as proof of whether or not a duty of care was breached." *Pierce v. Platte-Clay Elec. Coop., Inc.*, 769 S.W.2d 769, 772 (Mo. banc 1989). Therefore, FAK is not entitled to summary judgment even assuming, *arguendo*, that it did not violate the FMCSR. *Garrett v. Albright*, No.

7

06-CV-4137-NKL, 2008 WL 795621, at *3 (W.D. Mo. Mar. 21, 2008) ("Plaintiffs have established that even if Pro Logistics complied with the FMCSR, failure to follow industry practices caused Pro Logistics to negligently hire an unsafe driver."); *see also Harris v. Decker Truck Line, Inc.*, No. 4:12 CV 1598 DDN, 2013 WL 1769095, at *5 (E.D. Mo. Apr. 24, 2013) ("Missouri courts allow evidence of failures to follow motor carrier regulations and industry standards to support awards of punitive damages against commercial motor carriers.") (citing cases).

### ii. The Record Supports a Finding that FAK Owed and Breached Duties to Monroe.

FAK argues there is a lack of evidence showing that it owed or breached any duty to Monroe and that any alleged breach did not cause his injuries. Upon review of the record, the Court finds that the following facts are supported by the record, and construed in a light most favorable to Monroe, preclude summary judgment.

In a companion Order, the Court denied in relevant part Defendants' motion to exclude the testimony of Monroe's expert witness Christina Kelly. Ms. Kelly testified that the FMCSRs set forth the "minimum standards" for motor carriers. (Doc. #155-3, p. 17.) However, Ms. Kelly also opined that based on her knowledge and experience, "safe and prudent carriers go above and beyond that." (Doc. #155-3, p. 17.) Ms. Kelly further opined that motor carriers "have a responsibility to continuously train, supervise and monitor . . . drivers to ensure they continue to exhibit the qualities of a safe, professional driver." (Doc. #168-2, pp. 2-3.)

FAK admits it had a responsibility under the FMCSR for hiring, qualifying, and supervising Johnson. However, Ronald Harms, FAK's corporate representative, testified that FAK did not require Johnson to undergo a road test before it allowed him to drive a commercial vehicle on its behalf. (Doc. #169-4, p. 17.) Based on her knowledge and experience, Ms. Kelly

8

believes this failure fell below the requisite standard of care. She states that FMCSR 391.31 allows a company to accept a commercial driver's license ("CDL") in "lieu of a road test," but that "safe and prudent carriers" require a road test. (Doc. #155-3, p. 2; Doc. #168-2, p. 4.)

Ms. Kelly opined that a road test was necessary in this case because Johnson weighed approximately 400 pounds. Ms. Kelly believes that "when you see someone of Mr. Johnson's size and stature, you want to make sure he has the agility in that cab to use his mirrors properly." (Doc. #155-3, p. 2.)[6]

The record also shows that approximately one month before the accident at issue, Johnson was examined by Dr. Gary Hamm, a medical examiner for the United States Department of Transportation. Johnson appeared for the examination to renew his medical certificate so that he could drive under his commercial driver's license ("CDL"). Johnson did not disclose to Dr. Hamm several of his health conditions, including atrial fibrillation. Dr. Hamm issued Johnson a medical certificate, but testified he would not have done so at that time if he had known of these undisclosed conditions.

FAK relied only on the medical certificate produced by Johnson and failed to conduct any independent investigation into his health conditions. (Doc. #169-4, p. 21.) Mr. Harms also testified that FAK allowed Johnson to drive before receiving reports from eight of his nine prior employers regarding his driving history. (Doc. #169-4, p. 18.) FAK did not follow-up with those employers for additional information.

These and other facts presented by Monroe support a finding that FAK had a duty to ensure that Johnson was able to safely operate a truck and breached that duty which caused or

---

[6] Relatedly, shortly after striking Monroe, a police officer checked Johnson for signs of impairment. Although there is no indication Johnson was impaired due to drugs or alcohol, he had physical limitations and/or injuries that prevented him from completing a one-leg stand test and a walk and turn test.

9

contributed to cause Monroe's injuries. Although FAK presents evidence to the contrary, the record shows that there are disputed issues of material fact and that FAK is not entitled to summary judgment.

### C. FAK is Entitled to Summary Judgment on Monroe's Negligence Per Se Claim.

In Count VII, Monroe asserts a negligence per se claim against FAK. A negligence per se claim contains four elements: "1) the defendant violated a statute or regulation; (2) the injured plaintiff was a member of the class of persons intended to be protected by the statute or regulation; (3) the injury complained of was of the kind the statute or regulation was designed to prevent; and (4) the violation of the statute or regulation was the proximate cause of the injury." *Dibrill v. Normandy Assoc., Inc.*, 383 S.W.3d 77, 84-85 (Mo. App. E.D 2012). "Negligence per se is in effect a presumption that one who has violated a safety statute has violated his legal duty to use due care." *Goudeaux v. Bd. of Police Com'rs of Kansas City*, 409 S.W.3d 508, 513 (Mo. App. W.D. 2013).

Monroe's Third Amended Complaint alleges that FAK violated Mo. Rev. Stat. § 304.012.1. This statute provides that: "[e]very person operating a motor vehicle on the roads and highways of this state shall drive the vehicle in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person and shall exercise the highest degree of care." Mo. Rev. Stat. § 304.012.1.

FAK argues that Mo. Rev. Stat. § 304.012.1 does not prohibit specific conduct as required to prevail on a negligence per se claim. In support, FAK relies upon *Cisco v. Mullikin*, No. 4:11 CV 295 RWS, 2012 WL 549504 (E.D. Mo. Feb. 21, 2012). *Cisco* dismissed a negligence per se claim under Mo. Rev. Stat. § 304.012.1 because it does not "set[] out a statutory standard of care." *Id.* at *2.

10

Monroe's opposition brief does not explain why summary judgment should not be entered on the negligence per se claim.  Indeed, Monroe does not even address this claim.  Consequently, based on *Cisco* and the arguments presented by FAK, summary judgment will be entered in favor of FAK and against Monroe on this claim.

## IV.  CONCLUSION

Accordingly, Defendant FAK Logistics, Inc.'s Motion for Partial Summary Judgment (Doc. #161) is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED insofar as summary judgment is entered in favor of FAK and against Monroe on Count VII for negligence per se.  The motion is DENIED on all other claims.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated:  November 10, 2020