IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| PETER MONROE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-03238-SRB |
| | ) | |
| FREIGHT ALL KINDS INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant Herkon Productions, LLC's ("Herkon") Motion for Summary Judgment and Suggestions in Support. (Doc. #167.) For the reasons set forth below, the motion is GRANTED.

### I. FACTUAL BACKGROUND

For the purpose of resolving the pending motion, the following facts are uncontroverted or deemed uncontroverted by the Court. Additional facts relevant to the parties' arguments are set forth in Section III. Herkon produces a traveling show known as Rudolph the Red Nosed Reindeer: The Musical (the "Musical"). Herkon requires trucking services in order to move stage equipment and sets from city to city.

Defendant American Productions d/b/a Janco Limited ("Janco") is a professional trucking company and interstate motor carrier that specializes in transporting equipment and sets for theatrical and musical tours. Janco provided—and Herkon accepted—a quote for picking up, transporting, and delivering stage equipment and sets for the Musical's 2017 tour. In order to transport all of the equipment, Janco needed two separate drivers to operate two separate tractor-trailers.

For the first tractor-trailer, Janco supplied its own driver, tractor, and trailer. For the second tractor-trailer, Janco supplied the trailer but needed to find a driver and tractor. Janco and Defendant FAK Logistics, Inc. ("FAK") entered into a broker agreement in which FAK agreed to supply the second tractor and driver. (Doc. #172-8.) FAK obtained the second tractor, and the second driver, Defendant Michael Johnson ("Johnson"), by contracting with Defendant Trans Pacific Transportation, Inc. ("Trans Pacific").[1] Although Trans Pacific directly paid Johnson, his compensation was based on a percentage of what FAK paid to Trans Pacific.

The first tractor-trailer for the tour was operated by Janco employee Lee Radford ("Radford"). Radford was the designated "lead driver." Johnson operated the second tractor-trailer. During the times relevant to this lawsuit, Johnson testified that he did not use GPS to get to his destinations. Instead, he "just followed" Radford. (Doc. #173-6, p. 17.) On December 2, 2017, Radford and Johnson made their way through Springfield, Missouri, to deliver equipment for the Musical.

Meanwhile, Plaintiff Peter Monroe ("Monroe") was on a bicycle at an intersection. As Johnson made a right-hand turn from Walnut Street onto Hammons Parkway, his back wheels struck Monroe and drug him several yards. Monroe allegedly suffered severe injuries as a result of the accident.

On August 3, 2018, Monroe filed this suit against Defendants. Monroe's Third Amended Complaint asserts the following claims against Herkon: negligence (Count XX), negligent hiring/retention (Count XXI), negligent training (Count XXII), negligent supervision (Count XXIII), negligent entrustment (Count XXIV), and negligence per se (Count XXV).

---

[1] On or about August 7, 2017, Johnson submitted a "Driver's Owner Operator Application" to FAK. (Doc. #173-2, p. 1.) Johnson's application stated that he was applying for the position of "Contract Operator for Trans Pacific Transp., Inc." (Doc. #173-2, p. 1.) All page numbers refer to the pagination automatically generated by CM/ECF.

2

Herkon now moves for summary judgment on Counts XX-XXV. Herkon argues that summary judgment is warranted for several reasons, including that it had no involvement in hiring, training, or supervising Johnson. Herkon also contends that the negligent entrustment claim is not supported because it did not own or have any control over the tractor-trailer driven by Johnson. Monroe opposes the motion, and the parties' arguments are addressed below.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quotations and alterations omitted). Once the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotations omitted). If there is a genuine dispute as to the facts, those facts must "be viewed in the light most favorable to the nonmoving party." *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quotations omitted).

## III. DISCUSSION

**A. Herkon is Entitled to Summary Judgment on Monroe's Negligence Claim.**

In Count XX, Monroe asserts a negligence claim against Herkon. Herkon contends this claim is premised on a respondeat superior theory, but that there is no evidence to support a

3

master-servant relationship. Monroe opposes summary judgment, and argues the record supports an employer/employee or agency relationship. As set forth below, the Court agrees with Herkon.

Under Missouri law, an employer or principal "is liable under the theory of *respondeat superior* for damages attributable to the misconduct of an employee or agent acting within the course and scope of the employment or agency." *McHaffie v. Bunch*, 891 S.W.2d 822, 825 (Mo. banc 1995).[2] "In order to establish a principal/agent relationship, the principal must have a 'right to control' the agent." *Blunkall v. Heavy & Specialized Haulers, Inc.*, 398 S.W.3d 534, 541 (Mo. App. S.D. 2013). A "principal does not need to control or direct every movement, rather only those necessary to accomplish the final result." *Id.* Additionally, a written agency contract is not required; an "agency relationship may be created by words and conduct." *Id.* "An agency relationship may . . . exist even if the parties did not intend the relationship." *Id.*

In contrast, respondeat superior does not attach if an individual is merely an independent contractor. "An independent contractor is one who contracts with another to do something for him but is neither controlled by the other nor subject to the other's control with respect to his physical conduct in the performance of the undertaking." *Scott v. SSM Healthcare St. Louis*, 70 S.W.3d 560, 566 (Mo. App. E.D. 2002) (citations, quotations, and alterations omitted). "If there is no right to control, there is no liability; those rendering services but retaining control over their own movements are not servants." *Lee v. Pulitzer Pub. Co.*, 81 S.W.3d 625, 631 (Mo. App. E.D. 2002).[3]

---

[2] The Court finds that Monroe's substantive claims arise under Missouri law. Indeed, the parties cite and primarily rely upon Missouri law.

[3] Missouri courts consider various factors to determine "whether one acting for another is a servant or independent contractor." *Bargfrede v. Am. Income Life Ins. Co.*, 21 S.W.3d 157, 162 (Mo. App. W.D. 2000). These factors include:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;

4

"Whether a party is liable under the doctrine of respondeat superior depends on the facts and circumstances in evidence in each particular case and no single test is conclusive of the issue of the party's interest in the activity and the right to control." *Id.* In general, "the relationship of principal-agent or employer-employee is a question of fact to be determined by the jury when, from the evidence adduced on the question, there may be a fair difference of opinion as to the existence of the relationship." *Johnson v. Bi-State Develop. Agency*, 793 S.W.2d 864, 867 (Mo. banc 1990).

In this case, there are no genuine disputes of material fact regarding respondeat superior. The record shows the following, and establishes that Herkon did not have the right to control Johnson. Herkon was formed in 2014 for the purpose of holding the rights to, and to produce, the Musical. Herkon has never owned tractor-trailers. In order to transport stage equipment from city to city, Herkon accepted a quote offered by Janco. Janco is a professional trucking company and had sole discretion in deciding whether to contract with other motor carriers in order to transport the equipment. Janco entered into a broker agreement with FAK, and FAK agreed to provide Janco a tractor and a driver.

Herkon had no involvement with the broker agreement and was not a party to it. Herkon and Johnson never entered into a written contract or agreement. Herkon did not have any

---

(b) whether or not the one employed is engaged in a distinct occupation or business;
(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;
(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment, whether by the time or by the job;
(h) whether or not the work is a part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relation of master and servant; and
(j) whether the principal is or is not in business.

*Id.*

involvement in the selection, hiring, or retention of Johnson. In fact, Herkon has never employed Johnson. There is no indication that Herkon controlled how Johnson would perform his job, and Herkon and Janco have submitted affidavits explaining that Herkon did not have control over Johnson. (Doc. #167-1, p. 2; Doc. #167-2, p. 2.) Johnson also submitted an affidavit which similarly states, in part, "Herkon did not control or have the right to control the manner in which I performed my work or operated the tractor-trailer that I was driving as a professional driver." (Doc. #167-4, p. 2.)

Under all these circumstances, there are no genuine issues of material fact which suggest Herkon and Johnson had an employer/employee or principal/agent relationship. Instead, the record shows that Johnson was—at most—an independent contractor for Herkon. Herkon did not tell Johnson how to do his job and did not control Johnson "with respect to his physical conduct in the performance of the undertaking." *Scott*, 70 S.W.3d at 566. In addition, Herkon is not in the transportation business, did not supply Johnson the tractor-trailer, did not pay Johnson, and did not hire or supervise Johnson.[4] After considering the relevant factors, Herkon is not vicariously liable for Johnson's acts and omissions. *See Bargfrede*, 21 S.W.3d at 162 (listing factors for determining whether an individual is an independent contractor).[5]

Monroe's arguments in opposition are not supported by the record or are insufficient to create a fact issue. Monroe primarily points to the fact that Herkon exercised sole and exclusive authority over where and when he delivered equipment for the Musical. Monroe also

---

[4] The parties agree that Janco submitted an invoice to Herkon and that Herkon paid Janco.

[5] In an attempt to avoid summary judgment, Monroe points to instances in which Herkon referred to Johnson as "our driver." This argument is rejected in light of the evidence discussed throughout. Moreover, this reference appears to acknowledge that drivers were hauling equipment for Herkon, not that Herkon employed those drivers or had control over them.

6

emphasizes that Johnson was transporting Herkon's equipment and furthering Herkon's business interests.

However, these facts do not create the type of control necessary to establish a master-servant relationship. The right to control "must extend to the means and manner of service as distinguished from merely controlling the ultimate results of the service." *Stars Invest. Grp., LLC v. AT&T Corp.*, No. 4:15CV01370 AGF, 2017 WL 747610, at *6 (E.D. Mo. Feb. 27, 2017) (quoting *Steele v. Armour & Co.*, 583 F.2d 393, 398 (8th Cir. 1978) (applying Missouri law)). For example, in *Hougland v. Pulitzer Pub. Co., Inc.*, 939 S.W.2d 31 (Mo. App. E.D. 1997), the court held there was no master-servant relationship between a newspaper publisher and a carrier. This decision was based, in part, on the fact that while the carrier "was required to deliver the newspapers by a certain time every day, the details of delivery and distribution of the newspaper, as well as collection of money, were within [the carrier's] discretion." *Id.* at 35.

The facts of this case dictate the same outcome. Although Herkon specified pick-up and delivery times, Johnson and/or the other Defendants determined the routes to take and how Johnson was to perform his job. Consequently, Herkon is not vicariously liable for Johnson's acts or omissions. Summary judgment will therefore be entered in favor of Herkon on Count XX for negligence.[6]

### B. Herkon is Entitled to Summary Judgment on Monroe's Claims for Negligent Hiring/Retention, Negligent Training, and Negligent Supervision.

Herkon moves for summary judgment on Monroe's claims for negligent hiring/retention (Count XXI), negligent training (Count XXII), and negligent supervision (Count XXIII). Herkon argues these claims "are premised and entirely dependent on erroneous and unsupported

---

[6] For the reasons discussed throughout, there is no evidence to support a negligence claim against Herkon outside the context of vicarious liability.

allegations that Herkon hired, employed and retained Defendant Johnson as a driver for the tour." (Doc. #167, p. 16 (citing Third Amended Complaint, ¶¶ 266, 268, 271, 274, 284-289, 291-301, 308-314)). Monroe opposes summary judgment, but fails to specifically explain how the record supports a claim against Herkon for negligent hiring, training, or supervision.

As discussed above, Herkon did not have any involvement in the hiring, training, or supervision of Johnson. Monroe admits that "Herkon had no part in selecting Defendant Michael Johnson." (Doc. #172, p. 8.) The record shows that Herkon accepted Janco's quote for transporting equipment for the Musical. Janco then contracted with FAK to fulfill its obligations to Herkon. Herkon was not a party to Janco's agreement with FAK. Put simply, Monroe does not present evidence which shows that Herkon had or breached any duty with respect to Johnson's hiring/retention, training, or supervision. Therefore, the Court grants summary judgment in favor of Herkon on Counts XXI, XXII, and XXIII.

### C. Herkon is Entitled to Summary Judgment on Monroe's Claim for Negligent Entrustment.

In Count XXIV, Monroe asserts a claim against Herkon for negligent entrustment. To prevail on this claim, Monroe must prove the following elements: "(1) the entrustee was incompetent by reason of age, inexperience, habitual recklessness or otherwise; (2) the entrustor knew or had reason to know of the entrustee's incompetence; (3) there was entrustment of the chattel; and (4) the negligence of the entrustor concurred with the conduct of the entrustee to cause the plaintiff's injuries." *Matysyuk v. Pantyukhin*, 595 S.W.3d 543, 549 (Mo. App. W.D. 2020) (citations and quotations omitted). With respect to the third element, a plaintiff must show that the defendant "exercised control of the chattel, or at a minimum has had the capacity to exercise control over the chattel either before and/or after the purported 'entrustment.'" *Lockhart v. Carlyle*, 585 S.W.3d 310, 316 (Mo. App. W.D. 2019).

In this case, there is no evidence that Herkon exercised or had the right to exercise control over the tractor-trailer operated by Johnson. Herkon does not own tractor-trailers and did not own the tractor-trailer involved in the accident. Once Herkon accepted Janco's quote, Janco was responsible for securing the tractor-trailers necessary to fulfill its obligations. Trans Pacific owned the tractor operated by Johnson and Janco owned the trailer. Monroe has not produced evidence supporting "the fundamental requirement that [Herkon] . . . 'supplied' a chattel to a third party who cause[d] injury with the chattel." *Id.* As a result, the Court grants Herkon summary judgment on Count XXIV.

### E. Herkon is Entitled to Summary Judgment on Monroe's Negligence Per Se Claim.

In Count XXV, Monroe asserts a negligence per se claim against Herkon. A negligence per se claim contains four elements: "(1) the defendant violated a statute or regulation; (2) the injured plaintiff was a member of the class of persons intended to be protected by the statute or regulation; (3) the injury complained of was of the kind the statute or regulation was designed to prevent; and (4) the violation of the statute or regulation was the proximate cause of the injury." *Dibrill v. Normandy Assoc., Inc.*, 383 S.W.3d 77, 84-85 (Mo. App. E.D 2012). "Negligence per se is in effect a presumption that one who has violated a safety statute has violated his legal duty to use due care." *Goudeaux v. Bd. of Police Com'rs of Kansas City*, 409 S.W.3d 508, 513 (Mo. App. W.D. 2013).

In support of this claim, Monroe alleges that Herkon violated Mo. Rev. Stat. § 304.012.1. This statute provides that: "[e]very person operating a motor vehicle on the roads and highways of this state shall drive the vehicle in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person and shall exercise the highest degree of care." Mo. Rev. Stat. § 304.012.1.

However, Mo. Rev. Stat. § 304.012.1 does not prohibit specific conduct as required to prevail on a negligence per se claim. In *Cisco v. Mullikin*, No. 4:11 CV 295 RWS, 2012 WL 549504 (E.D. Mo. Feb. 21, 2012), the court dismissed a negligence per se claim under Mo. Rev. Stat. § 304.012.1 because it does not "set[] out a statutory standard of care." *Id.* at *2. In addition, there is no evidence that Herkon operated, owned, or had control over the tractor-trailer involved in the accident. In addition, as discussed above, Herkon is not vicariously liable for Johnson's acts and/or omissions. Finally, Monroe's opposition brief does not even address this claim. For these reasons, Herkon is granted summary judgment on Count XXV.[7]

### F. Herkon is Entitled to Summary Judgment on Monroe's Request for Punitive Damages.

Finally, Herkon argues that because summary judgment is warranted on Monroe's substantive claims, summary judgment should also be entered on Monroe's request for punitive damages. Monroe's opposition brief does not address this argument, or even mention punitive damages. Under these circumstances, the Court grants Herkon summary judgment on Monroe's request for punitive damages. *See Amesquita v. Gilster-Mary Lee Corp.*, 408 S.W.3d 293, 305 (Mo. App. E.D. 2013) ("Punitive damages do not constitute an independent cause of action.")

### IV. CONCLUSION

Accordingly, Defendant Herkon Productions, LLC's Motion for Summary Judgment and Suggestions in Support (Doc. #167) is GRANTED. Summary judgment is granted in favor of Herkon and against Monroe on all claims asserted against Herkon—Counts XX, XXI, XXII,

---

[7] Monroe's opposition brief attempts to argue that Herkon is liable under a "joint venture" theory. (Doc. #172, p. 24.) However, this argument is not supported by the record. For example, there is no evidence that all Defendants shared "equal control over the enterprise," or that all Defendants had "a right to share in the profits and a duty to share in the losses." *See Barfield v. Sho-Me Power Elec. Coop.*, No. 11-cv-04321-NKL, 2013 WL 12145822, at * 4-5 (W.D. Mo. Apr. 15, 2013).

10

XXIII, XXIV, and XXV, and on Monroe's request for punitive damages against Herkon. Herkon is therefore dismissed from this lawsuit.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: November 10, 2020